UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

   - against -

O'DELL HOLLAND,

              Defendant.

------------------------------------X

09 Cr. 142-01 (RWS)

SENTENCING OPINION

**Sweet, D.J.**

On April 13, 2010, O'Dell Holland ("Holland" or "Defendant") allocuted to one count of embezzlement from a program receiving federal funds, in violation of 18 U.S.C. § 666(a)(1)(A). For the reasons set forth below, Holland will be sentenced to 30 months' imprisonment to be followed by 3 years' supervised release. Holland will also be required to pay restitution of $900,000, a fine of $6,000, and a special assessment of $100.

**Prior Proceedings**

On February 11, 2009, Indictment 09 CR 142 (RWS) was filed in the Southern District of New York. Count One charges

1

that from March 2004 through December 10, 2008, in the Southern District of New York and elsewhere, Holland caused more than $900,000 belonging to the Tremont Community Council Home Attendant Program, Inc. ("Tremont") to be diverted for his personal use by, among other things, making unauthorized wire transfers from and writing checks on Tremont's account, in violation of 18 U.S.C. § 666.

On April 13, 2010, Holland appeared before the Honorable Ronald L. Ellis in the Southern District of New York and allocuted to his criminal conduct as charged, without the benefit of a plea agreement.

Holland's sentencing is currently scheduled for March 24, 2011.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C.

§ 3553(a), including the advisory Guidelines. Thus, the sentence to be imposed here is the result of a consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed —

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for —

   (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

(5) any pertinent policy statement . . . [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find

all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a Guidelines sentence is warranted in the instant case.

**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Holland's personal and family history.

**The Offense Conduct**

The following description draws from the PSR. The specific facts of the underlying conduct are adopted as set forth in that report.

This offense was investigated by the NYC Department of Investigation ("DOI") and the U.S. Attorney's Office for the Southern District of New York.

The NYC Human Resources Administration ("HRA") is a New York City agency responsible for administering federal Medicaid funds for home care services. HRA enters into contracts with home attendant programs that send attendants into the homes of people requiring non-medical household assistance, determines individuals' eligibility for such assistance based on their income and needs, and oversees the distribution of Medicaid funds to the home attendant programs.

From at least January 2004 until June 2008, Tremont contracted with New York City, through HRA, to provide home attendant services to Medicaid-eligible elderly and disabled individuals in the Bronx. Until its contract with New York City expired in June 2008, Tremont provided home attendant services to more than 200 clients. During this period, Holland was the Program Director of Tremont.

During his tenure as Program Director, Holland

diverted approximately $900,000 belonging to Tremont for his personal benefit. To effect the misappropriation, Holland made wire transfers and wrote checks from Tremont's account to himself. Between May 21, 2007, and September 23, 2008, Holland misappropriated at least $531,500 through these methods.

Holland used at least $135,000 of Tremont's funds to pay an architect for renovations and other architectural work at a nightclub in the Bronx and a residence in Pomona, New York, both of which Holland owned. Holland also caused hundreds of thousands of dollars of Tremont's funds to be transferred to accounts held by a Manhattan law firm and one of its principals. Approximately $258,000 of that money was later transferred to Holland or to third parties on his behalf.

DOI officials spoke with an employee of Tremont, who admitted that he had provided Holland with numerous blank checks bearing the signature stamp of Tremont's Founder and Executive Director. On November 25, 2008, the employee, at the direction of Holland, gave an ex-employee of Tremont a blank check bearing the signature stamp of Tremont's Founder and Executive Director. Agents later determined that the check was made out to Holland and that Holland attempted to deposit it in his personal

account.  The check did not clear, as Tremont's account had already been frozen.

On December 4, 2008, the employee received a text message from Holland that told the employee to provide ten checks to "Peter."  The employee provided the ten checks directly to Holland.

After further investigation, Holland was arrested on December 12, 2008, without incident.

**The Relevant Statutory Provisions**

Pursuant to 18 U.S.C. § 666, the maximum term of imprisonment is 10 years.

If a sentence of imprisonment is imposed, the Court may impose a term of supervised release of not more than 3 years, pursuant to 18 U.S.C. § 3583(b)(2).

Defendant is eligible for not less than 1 nor more than 5 years' probation, pursuant to 18 U.S.C. § 3561(c)(1).

The maximum fine that may be imposed is $250,000, pursuant to 18 U.S.C. § 3571. A special assessment of $100 per count is mandatory, pursuant to 18 U.S.C. § 3013.

Full restitution to the victim is required under 18 U.S.C. §§ 3663A and 3664.

**The Guidelines**

The November 1, 2009 edition of the United States Sentencing Commission Guidelines Manual has been used in this case for calculation purposes, pursuant to § 1B1.11(a). The Court finds the following with respect to Defendant's applicable offense level, criminal history, recognition of responsibility, and term of imprisonment:

The Guideline for the violation of 18 U.S.C. § 666 is found in § 2B1.1, which provides for a base offense level of 6, pursuant to § 2B1.1(a)(2).

Because Defendant stole approximately $900,000, the offense level is increased by 14 levels, pursuant to § 2B1.1(b)(1). The offense level is increased by 2 additional

levels, pursuant to § 3B1.3, because Defendant was in a position to authorize payments as Program Director of Tremont and abused that position of trust.

Based on his plea allocution, Defendant has shown recognition of his responsibility for the offense. Pursuant to § 3E1.1(a), the offense is reduced two levels. Furthermore, an additional one-level reduction is warranted, pursuant to § 3E1.1(b), because Defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

Accordingly, the applicable offense level is 19.

Defendant has no prior criminal convictions. Therefore he has zero criminal history points and a Criminal History Category of I.

Based on a total offense level of 19 and a Criminal History Category of I, the Guidelines range for imprisonment is 30 to 37 months.

The Guidelines range for a term of supervised release is 2 to 3 years, pursuant to § 5D1.2(a)(2).

Because the applicable Guidelines range is in Zone D of the Sentencing Table, the Guidelines do not authorize a sentence of probation, pursuant to § 5B1.1, Application Note 2.

The fine range for the instant offenses is $6,000 to $1,800,000, pursuant to § 5E1.2(c)(3)(A) and (c)(4)(A). Subject to Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,270.93 to be used for imprisonment, a monthly cost of $317.32 for supervision, and a monthly cost of $2,063.19 for community confinement.

Pursuant to § 5E1.1(a)(1), in case of an identifiable victim, the Court shall enter a restitution order for the full amount of the victim's loss if such order is authorized under 18 U.S.C. § 3663A.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103.  Upon consideration of all of the relevant factors, it is concluded that the imposition of a Guidelines sentence is warranted.

**The Sentence**

For the instant offenses, Holland will be sentenced to 30 months' imprisonment and 3 years' supervised release.

Holland is directed to report to the nearest United States Probation Office within seventy-two hours of release to commence his term of supervised release.  It is recommended that Holland be supervised by the district of his residence.

As mandatory conditions of his supervised release, Holland shall:  (1) not commit another federal, state, or local

crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; and (4) cooperate in the collection of DNA as directed by the probation officer. The mandatory drug testing condition is suspended based on the Court's determination that Defendant poses a low risk of future substance abuse.

Furthermore, the standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special conditions:

(1) Defendant shall provide the probation officer with access to any requested financial information.

(2) Defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless Defendant is in compliance with the installment payment schedule.

(3) Defendant shall participate in a mental health program approved by the U.S. Probation Office. Defendant shall continue to take any prescribed medications unless otherwise instructed by the health care provider. Defendant shall

contribute to the costs of services rendered not covered by third-party payment, if Defendant has the ability to pay. The Court authorizes the release of available psychological and psychiatric evaluations and reports to the health care provider.

(4) Defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. Defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

Defendant shall make restitution in the amount of $900,000, payable to the Clerk of the Court, for disbursement to HRA through the NYC Department of Investigation, 80 Maiden Lane, New York, New York 10038, Attn: Pat Russo, Inspector General.

Defendant shall also pay a fine of $6,000.

The factors in 18 U.S.C. § 3664(f)(2) were considered

in formulating the payment schedule. If Defendant is engaged in a BOP non-UNICOR program, he shall pay $25 per quarter toward the criminal financial penalties. If he participates in the BOP's UNICOR program as a grade 1 through 4, he shall pay 50% of his monthly UNICOR earnings toward the criminal financial penalties, consistent with BOP regulations at 28 C.F.R. § 545.11. The balance of the fine and restitution shall be paid in monthly installments of 10% of gross monthly income over a period of supervision to commence 30 days after the date of Defendant's release from custody.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for March 24, 2011.

It is so ordered.

**New York, NY**
**March  2-1, 2011**

ROBERT W. SWEET
U.S.D.J.